## THE DAUNTLESS.

### (District Court, E. D. Pennsylvania. June 20, 1902.)

1. COLLISION—STEAM VESSELS MEETING—ERROR IN CHANGING COURSE.
    A tug with two barges lashed to her starboard side was passing down the Delaware river about the middle of the channel when she met a ferryboat, which was coming up near the western side. It was early in the morning, but the vessels saw each other when half a mile apart, and each showed to the other her green light. They were on courses which would have taken them past each other in safety, but when some 200 yards apart they exchanged signals to pass starboard and starboard, and the tug starboarded her helm, to give still more room, but the ferryboat, through some error, changed her course to starboard directly across that of the tug, and a collision resulted, her port bow striking the starboard bows of both barges, and injuring them, so that both sank with their cargoes. *Held*, that the ferryboat was solely in fault for the collision.

2. SAME—DEFENSES.
    In a suit to recover the value of the cargo of a barge, sunk in collision while in tow, against the vessel through whose fault the collision occurred, it is no defense to such vessel that the tug was negligent in permitting her tow to sink after the collision.

In Admiralty.  Suit for collision.

Horace L. Cheyney, for libelant.

Henry R. Edmonds, for respondent.

J. B. McPHERSON, District Judge.  The libelant sues to recover the value of a cargo of coal upon the barge Nellie, which was lost in a collision with the ferryboat Dauntless in the Delaware river about daybreak on October 17, 1899.  The testimony establishes the following facts:  The barges Nellie and McNeill were being towed by the tug Josephine Lincoln down the Delaware river from Port Richmond to some point on the Schuylkill river.  The Nellie, having on board the libelant's coal, was made fast to the starboard side of the tug, and the McNeill, having on board a cargo of crushed stone, was lashed to the starboard side of the Nellie.  The barges extended about 60 feet ahead of the tug, and the stern of the tug was about 5 feet aft of the barges.  The tide was ebb, and the morning a little misty, but not enough to prevent lights from being visible at least a half mile, and probably a good deal further.  Both vessels were carrying the proper lights.  The pilot and another man were at the wheel of the Dauntless, and a lookout was stationed at her bow.  The master of the tug was at her wheel, but there was no lookout either on the tug or upon the barges.  In my opinion, however, none was necessary.  Each vessel saw the other in ample time, and the collision was not due to the absence or the negligence of a lookout.  As the tug and tow were proceeding down the river about mid-channel, the green and the bright lights of the Dauntless, which was coming up the river on the western side of the channel, were seen about half a mile away.  The vessels kept their respective courses until they were about 200 yards apart.  Each was then showing her green light to the other, and their courses would have carried them past each other in safety.  As a proper precaution, however, the Lincoln blew a signal of two blasts, indicating that she would pass on the ferryboat's starboard side, and put her wheel to starboard, in order to throw her head still further to the port, or eastward, side of the river.  The Dauntless accepted the signal, and replied with two blasts, but for some unexplained reason (possibly, as has been suggested, because the wrong order was given, or because the right order was disobeyed by the man at the wheel), instead of keeping her course, or moving further away from the tug, she suddenly sheered to starboard, contrary to the signals that had been exchanged, and directly across the course of the tug.  By this time the vessels were not far apart, and a collision was inevitable.  Both vessels blew danger signals, and their engines were put full speed astern.  In spite of these efforts, the Dauntless continued to starboard, and her port bow struck the McNeill on the starboard bow close to the stem, crushing through it, and striking the starboard bow of the Nellie.  The McNeill sank at once, but the tug was able to run the Nellie on the bank of the river, which seems at this point to be steep.  Afterwards, but how long afterwards does not appear, the barge slipped off the bank into deep water, and with its cargo became a total loss.

Upon the foregoing facts, there can be no doubt of the ferryboat's fault.  There is some evidence that might, if believed, incline the

court towards a different conclusion, but the testimony offered by the respondent, taken as a whole, is so confused and contradictory that I place little reliance upon it. Indeed, the admitted fact that it was the port bow of the Dauntless that struck the starboard bow of each barge discredits the respondent's account so much that it might safely be discarded altogether.

The respondent suggests, further, that the tug was negligent in abandoning the barge originally, and also in the subsequent search. This might be relevant if the libelant were suing the tug, but I am unable to see how it can avail the ferryboat as a defense against a loss of cargo that was certainly caused, in part, at least, by her own fault.

A decree may be entered in favor of the libelant.